UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BEAUMONT LAMAR APARTMENTS, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 4:23-cv-00341-O |
| WALLIS BANK, *et al.* | § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants William F. Burge III, Faizel Dakri, Farid Virani, and Jodie Jiles' Motion for Summary Judgment (ECF No. 18), filed June 29, 2023; Defendant Wallis Bank's Motion for Partial Summary Judgment (ECF No. 19), filed June 29, 2023; and Defendants Musa Dakri, Asif Dakri, Ayaz Nasser, Robert Adam, William F. Burge III, Nasr Khan, Faizel Dakri, Roger Sebesta, Jodie Jiles, and Farid Virani's Motion for Summary Judgment (ECF No. 20); Plaintiff Beaumont Lamar Apartments, LLC's Response in Opposition to Defendants' Motions for Summary Judgment and Appendix in Support (ECF Nos. 50, 51), filed October 20, 2023; and Defendants' Reply in Support of the Motions for Summary Judgment (ECF No. 71), filed November 3, 2023.

Also before the Court are Plaintiff's Motion to Strike Affidavits in Support of Defendants' Motions for Summary Judgment and Appendix in Support (ECF Nos. 52, 53), filed October 20, 2023; Defendants' Motion to Strike the Arguments & Authorities in Plaintiff's Response in Opposition to Defendants' Motions for Summary Judgment and the Supporting Declaration of Selim Kiralp (ECF No. 69), filed October 31, 2023; Defendants' Response in Opposition to Plaintiff's Motion to Strike Affidavits in Support of Defendants' Motions for Summary Judgment

1

(ECF No. 70); Plaintiff's Response in Opposition to Defendants' Motion to Strike the Motion to Strike the Arguments & Authorities in Plaintiff's Response in Opposition to Defendants' Motions for Summary Judgment and the Supporting Declaration of Selim Kiralp (ECF No. 72); Plaintiff's Motion to Strike Arguments and Appendix in Support of Defendants' Motions for Summary Judgment Reply with Alternative Request for Leave to File a Sur-Reply (ECF No. 73), filed November 8, 2023; Defendants' Reply in Support of the Motion to Strike the Arguments & Authorities in Plaintiff's Response in Opposition to Defendants' Motions for Summary Judgment and the Supporting Declaration of Selim Kiralp (ECF No. 77), filed November 21, 2023; Defendants' Response in Opposition to Plaintiff's Motion to Strike Arguments and Appendix in Support of Defendants' Motions for Summary Judgment Reply with Alternative Request for Leave to File a Sur-Reply (ECF No. 78), filed November 29, 2023; and Plaintiff's Reply in Support of its Motion to Strike Arguments and Appendix in Support of Defendants' Motions for Summary Judgment Reply with Alternative Request for Leave to File a Sur-Reply (ECF No. 79).[1]

For the reasons set forth herein, the Court determines that Defendants' Motions for Summary Judgment (ECF Nos. 18, 19, 20) should be **DENIED**, while the remaining pending Motions (ECF Nos. 52, 69, 73, 78) should therefore be **DENIED as moot**.

I.  BACKGROUND

This lawsuit arises out of a series of bank loans that were contracted and executed for the purpose of financing a construction project. Specifically, Plaintiff Beaumont Lamar Apartments, LLC ("Beaumont") executed three contractual loan agreements with Defendant Wallis Bank ("Wallis Bank") to finance the construction of a 120-unit student housing complex on a plot of

---

[1] The Court does not appreciate the chaotic motions war that ensued between the parties during the briefing stages of summary judgment. These antagonistic motions are frivolous and the Court refuses to entertain them. Neither will the Court's tolerance for such detestable litigious behavior become any more lenient as the case moves forward. The parties are put on notice to proceed accordingly.

land located near Lamar University in Beaumont, Texas (the "Property"). Beaumont purchased the Property to be repurposed into an apartment complex in July 2019. The construction costs were projected to exceed $10 million. Beaumont accordingly agreed to take out three loans from Wallis Bank—totaling $8,956,372—to support the completion of the housing project. Loan 51489 closed on January 9, 2020 for $4,078,302 (the "First Loan Agreement"), Loan 55411 closed on January 19, 2021 for $4,201,070 (the "Second Loan Agreement"), and Loan 57728 closed on March 16, 2022 for $677,000 (the "Third Loan Agreement").

Prior to construction, Wallis Bank demanded that construction be split into two phases with two separate loans. Wallis Bank made this demand in spite of the architectural and engineering plans that Beaumont had already procured, which required construction to be completed in a single phase. According to Beaumont, the two-phase approach frustrated its ability to secure a quality general contractor for the project. With the approval of Wallis Bank, Beaumont was eventually able hire OneForce Construction, LLC to serve as the general contractor for the project. Wallis Bank further required Beaumont to hire Wallis Bank's longtime associate—Defendant Stephen McCune ("McCune") and his company Defendant McCune Construction Services Group, LLC n/k/a McCune Construction Funds Management, LLC ("McCune Construction")—to serve as both third-party inspector and trust funds manager for the project.

More specifically, Wallis Bank allegedly required that Beaumont contract with McCune Construction to provide completion guarantees/bonds for each of the two phases wherein, in exchange for a fee, McCune Construction would step into the role of general contractor and complete the construction project if the general contractor was terminated. The settlement statements for the First Loan Agreement and Second Loan Agreement showed that Beaumont was charged $50,000 for the Phase I completion guarantee/bond and $20,640 for Phase II. According

3

to Beaumont, however, McCune Construction charged only $24,450 for the Phase I bond and $18,000 for the Phase II bond. Wallis Bank allegedly retained $25,550 of Beaumont's Phase I bond payment and $15,360 of Beaumont's Phase II bond payment, amounting to over $40,000. Beaumont maintains that Wallis Bank did not disclose to Beaumont the actual amounts charged by McCune Construction for these services, that Wallis Bank retained any of Beaumont's payments, or the amount of Beaumont's payments retained by Wallis Bank.

In January 2021, the City of Beaumont Fire Prevention Division issued a Stop Work Order that required certain water and concrete work to be completed before construction could resume. Per Wallis Bank's requirement, some of the specific water and concrete work required by the City had been allocated to Phase II funding. Phase II construction could only begin upon the completion of Phase I construction. Beaumont requested that the funds allocated for the water and concrete work in Phase II be transferred to Phase I so that the project could proceed on track. Wallis Bank agreed to the loan modification. However, Beaumont alleges that when its representative arrived to close this modification, he was unexpectedly presented with a Balloon Real Estate Lien Note, a third loan in the amount of $677,000, and a Deed of Trust. Beaumont alleges that Defendant Peterson—then-Chief Credit Officer of Wallis Bank—erroneously told Beaumont that Wallis Bank required a third loan instead of a loan modification because it was not possible to get title coverage on the loan modification. On top of that, Defendant Peterson purportedly issued a warning to Beaumont's representative that if Beaumont did not agree to the third loan, Wallis Bank was prepared to quickly cease financing of the project and foreclose on the Property.

With no other option but to agree to the third loan or lose substantial investment, Beaumont signed and executed the Third Loan Agreement in March 2022. Contained therein is a contractual release provision ("Release of Payee"), which states the following:

In consideration of the agreement of the Payee to provide this Note, and other good and valuable consideration, which consideration is agreed by Maker to be good and sufficient, Maker RELEASES, ACQUITS and FOREVER DISCHARGES the Payee, its directors, officers, shareholders, agents, contractors, employees, affiliates, attorneys, successors and assigns from any and all claims, demands, liens, damages, actions or suits, of whatever nature or character, whether statutory (including without limitation usury and deceptive trade practices claims), in contract or in tort, known or unknown, which have accrued or may accrue to Maker or any creditor or affiliate of Maker on account of any injuries, fraud (including fraud in the inducement), damages or losses or otherwise arising out of or in any way connected to (i) any extension of credit by Payee to Maker on or prior to the date hereof, or (ii) any matter or thing done, omitted or suffered to be done by the Payee, its directors, officers, shareholders, agents, employees, affiliates, attorneys, predecessors, or assigns on or prior to the date hereof.

A combination of construction mistakes committed by the general contractor and financing delays caused by Wallis Bank and McCune Construction began to compound and cause delays. As a result, Beaumont's student housing project fell into disarray. Wallis Bank has since admitted that it mismanaged the financing on several occasions. In other instances, McCune paid the general contractor for work it had yet to complete. To illustrate, the general contractor requested and received payment for approximately 98% of the Phase I financing despite not even completing 60% of the Phase I construction work. Wallis Bank and McCune Construction must have been aware of this deficiency. McCune simultaneously acted as the third-party inspector and the trust funds manager, while Wallis Bank conducted its own on-site inspections and internal reports of

the Property to document the construction progress. Wallis Bank refused Beaumont's subsequent request to have McCune Construction removed from the student housing project.

Upon recognizing what had been transpiring over its head, OneForce Construction, LLC notified Beaumont that it would cease to perform its role as general contractor. Beaumont proceeded to terminate its general contractor, triggering the completion guarantee/bond requiring McCune Construction to substitute in as the general contractor and complete the project. But instead of resuming the construction work, McCune Construction indicated that it did not have the capacity to do so despite the construction completion guarantee/bond agreement. In the meantime, OneForce Construction, LLC proceeded to file two fraudulent liens on the Property. As Beaumont was working to remove the liens, Wallis Bank and its officers and board directors (the "Bank Defendants") indicated that they would refuse to further finance the project, accelerate the loans, and foreclose on the Property if construction work ceased for more than fifteen days. These comments and actions were asserted despite the Bank Defendants' knowledge that the liens were fraudulent. In February 2023, the liens were removed by a court order finding them to be fraudulent, invalid, and unenforceable under Texas law.

Thereafter, Wallis Bank requested that Beaumont submit a plan to proceed with the completion of the project and pay the property taxes. Beaumont did so accordingly. Nevertheless, Beaumont was informed by its loan officer at Wallis Bank that he could no longer communicate with Beaumont regarding the construction project. Wallis Bank ceased its financing of the project and refused to communicate with Beaumont about it as well. After Beaumont filed the present lawsuit in Tarrant County Court, Wallis Bank sought foreclosure of the Property and removed the case to federal district court in April 2023. On June 2, 2023, the Court denied Beaumont's

application to temporarily restrain and preliminarily enjoin foreclosure on the Property.[2] The Property was later foreclosed on June 6, 2023.

The Bank Defendants—including Wallis Bank itself as well as various members of Wallis Bank's Board of Directors ("Board Directors")—now move for summary judgment in their favor on most of the claims brought by Beaumont, requesting that the Court dismiss them entirely. Following completion of the parties' briefing, the motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id*. The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

Courts must view all evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013) (citations omitted). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id*. (citations omitted). And if there appears to be some

---

[2] *See* Order, ECF No. 17.

support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

The opposing party must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court must grant summary judgment. *Celotex*, 477 U.S. at 322–23. In that situation, no genuine dispute of material fact can exist, as the failure to establish an essential element of the claim "necessarily renders all other facts immaterial." *Id.* at 323.

### III.    ANALYSIS

Upon review of the parties' briefing, evidence, and applicable law, the Court is of the opinion that the Bank Defendants are not entitled to summary judgment against Beaumont on any of the grounds asserted their motions for summary judgment.

#### A.    Beaumont's Claims Against Individual Board Directors of Wallis Bank

The individual Board Directors of Wallis Bank advance two Motions for Summary Judgment against Beaumont.[3] The Court holds that neither motion warrants a grant of summary judgment in their favor.

##### 1.    "Non-Participating" Board Directors – Fraud, Conspiracy, & RICO

At issue in the first Motion for Summary Judgment are Beaumont's claims of fraud, conspiracy, and RICO violations asserted against Board Directors William F. Burge III, Faizel Dakri, Farid Virani, and Jodi Jiles for their alleged roles in the bank loans made to Beaumont and

---

[3] *See* Defs.' Mot. for Summ. J., ECF No. 18; Defs.' Mot. for Summ. J., ECF No. 20.

the foreclosure on the Property. This group of Board Directors, referring to themselves as "Non-Participating Defendants," contend they are entitled to summary judgment dismissal of these claims because they did not participate or have any involvement in the events giving rise to them—and thus cannot be held liable for them.[4]

In support of this contention, these purported non-participants proffer affidavits containing their own attestations to the same effect, claiming that while they were generally aware of the loan agreements between Beaumont and Wallis Bank, they were not involved in the decision-making as to funding, modification, or structuring of those loans or in any discussions as to foreclosing on the Property.[5] Beaumont retorts that the depositions provided by these very same Board Directors and others establish that they actually *did* have more than just a mere awareness of the events giving rise to Beaumont's claims.[6] Beaumont specifically points to disposition testimony where these self-proclaimed non-participants' *themselves*—along with other Board Directors—suggest they actually *were* involved in some of the key decisions surrounding Wallis Bank's loans made to Beaumont and the foreclosure on the Property.[7]

Because "reasonable minds could differ as to the import of the evidence" of these Board Directors' involvement in the conduct underlying Beaumont's claims, the Court **DENIES** their Motion for Summary Judgment to the extent it requests dismissal on this basis. *Anderson*, 477 U.S. at 250.

    2.    <u>All Board Directors – Fraud & Conspiracy</u>

At issue in the first and third Motions for Summary Judgment are Beaumont's claims of fraud and conspiracy asserted against all Board Directors for their alleged roles in the bank loans

---

[4] *See* Defs.' Mot. for Summ. J. 1-5, ECF No. 18; Defs.' Reply 2, ECF No. 71.
[5] *See* Defs.' Mot. for Summ. J., ECF Nos. 18-1, 18-2, 18-3, 18-4.
[6] *See* Pl.'s Resp. 16-19, ECF No. 50.
[7] *See id.*; Pl.'s Resp. App'x. Exs. 1-2, 7, 11, ECF Nos. 51-1, 51-2, 51-7, 51-11.

made to Beaumont and the foreclosure on the Property. The Bank Defendants seek summary judgment dismissal of these claims on grounds that Beaumont contractually released all claims against them relating to the construction loan contracts and improvements by way of executing the Third Loan Agreement, which contains the Release of Payee.[8]

Release is an affirmative defense under Texas law that serves as a bar to subsequent actions covered within the applicable release. *See Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. CIV A 304CV1866-D, 2007 WL 2403656, at *9 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.). Where a summary judgment movant bears the burden of proof on an affirmative defense such as release, that movant must establish, beyond peradventure, every essential element of the affirmative defense to be entitled to summary judgment. *See Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). And in order to establish the affirmative defense of release, a movant "is required to prove the elements of a contract." *Payne v. BNSF Ry. Co.*, 650 S.W.3d 891, 896 (Tex. App.—Fort Worth 2022, no pet.).

A valid contract comprises of (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 150 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). But "[a] release, like any other contract, may be avoided if induced by fraud or misrepresentations." *Page v. Baldon*, 437 S.W.2d 625, 629 (Tex. App.—Dallas 1969, writ ref'd n.r.e.); *see also Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 287 (Tex. App.—Amarillo 1990, writ denied) (providing that "a release is subject to being set aside if it was induced by fraud"). So too, a release agreement formed under economic duress amounts to an avoidance of that contract and the affirmative defense along with it. *See Brown v. Cain Chem.*,

---

[8] *See* Defs.' Mot. for Summ. J. 2-6, ECF No. 20; Defs.' Reply 2-4, ECF No. 71.

Inc., 837 S.W.2d 239, 242-43 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Furthermore, a release contract may be set aside as unenforceable if the agreement is unconscionable. *See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 135 (Tex. App.—Waco 2005, pet. denied).

In support of their release defense, the Board Directors merely recite the elements that form a valid contract, along with a cursory conclusory statement that it "is undeniable that [Beaumont] and Wallis Bank executed valid contracts."[9] The only evidence adduced in support of this sweeping conclusion on all of the contact elements is Beaumont's signed execution of the Third Loan Agreement containing the Release of Payee.[10] Moreover, Beaumont furnishes thoroughly briefed counterarguments—drawing extensively from evidence available in the record—which strongly suggest that the Third Loan Agreement and Release of Payee were induced by the Bank Defendants via fraudulent means, were entered into by Beaumont under economic duress, and are unconscionable.[11] And the Board Directors make little-to-no effort to rebut Beaumont's comprehensive showing that the Release of Payee should be set aside as an affirmative defense to Beaumont's claims.[12]

Since the Board Directors fail to establish the essential elements of their contractual release defense beyond peradventure, the Court **DENIES** their Motions for Summary Judgment insofar as they request dismissal of Beaumont's claims on these grounds. *See Addicks Servs., Inc.*, 596 F.3d at 293.

---

[9] Defs.' Mot. for Summ. J. 4, ECF No. 20.
[10] *See id.* (merely stating that "Beaumont's execution of the Promissory Note is evidence of [its] agreement to its terms."); Defs.' Mot. for Summ. J. App'x. 6, ECF No. 20-1 (the Third Loan Agreement signed on behalf of Beaumont).
[11] *See* Pl.'s Resp. 20-30, ECF No. 50.
[12] *See generally* Defs.' Reply 2-10, ECF No. 71.

11

### B. Beaumont's Claims Against Wallis Bank

Wallis Bank advances a Motion for Partial Summary Judgment that seeks dismissal of Beaumont's claims of breach of contract, fraud, conspiracy, gross negligence, breach of fiduciary duty, and insurance code violations asserted against Wallis Bank.[13] The Court holds that Wallis Bank is not entitled to summary judgment on any of the claims at issue its Motion.

#### 1. Breach of Contract, Fraud, Conspiracy, & Gross Negligence

With respect to the breach of contract, fraud, conspiracy, and gross negligence claims, Wallis Bank seeks summary judgment dismissal on grounds identical to those asserted by the Board Directors—i.e., that Beaumont contractually released all such claims arising out of the construction loan contracts and improvements when it executed the Third Loan Agreement containing the Release of Payee.[14] Yet Wallis Bank's arguments in support of its contractual release defense are *also* identical to those asserted by the Board Directors.[15]

For the same reasons as the Board Directors, then, Wallis Bank fails to establish the essential elements of its contractual release defense. The Court therefore **DENIES** its Motion for Partial Summary Judgment to the extent that it seeks to dismiss Beaumont's claims of breach of contract, fraud, conspiracy, and gross negligence. *See Addicks Servs., Inc.*, 596 F.3d at 293.

#### 2. Breach of Fiduciary Duty

Wallis Bank requests summary judgment dismissal of Beaumont's breach of fiduciary duty claim on account of not owing a fiduciary duty to Beaumont.[16]

Although lenders generally do not owe a fiduciary duty to borrowers under Texas law, an informal fiduciary relationship may arise between them under certain circumstances. *See Farah v.*

---

[13] *See generally* Defs.' Mot. for Summ. J., ECF No. 19.
[14] *See id.* at 2-5; Defs.' Reply 2-4, ECF No. 71.
[15] *Compare* Defs.' Mot. for Summ. J. 2-5, ECF No. 19, *with* Defs.' Mot. for Summ. J. 2-6, ECF No. 20.
[16] Defs.' Mot. for Summ. J. 5-6, ECF No. 19; Defs.' Reply 3, ECF No. 71.

*Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ). For example, a fiduciary relationship of this kind may arise through "'extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities.'" *Davis v. West*, 317 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Farah*, 927 S.W.2d at 675); *see also In re Bailey Tool & Mfg. Co.*, No. 16-30503-SGJ-7, 2021 WL 6101847, at *41 (Bankr. N.D. Tex. Dec. 23, 2021) ("If a lender exercises excessive control over a borrower, however, a lender can assume the role of a fiduciary rather than a mere creditor."). "When such a change occurs, the lender must refrain from misleading or concealing information from the borrower and the lender is required to make decisions in the best interests of the borrower, even if contrary to the best interest of the lender." *Id.*

Wallis Bank rests its motion to dismiss Beaumont's breach of fiduciary duty claim on a blanket assertion that it "owes [Beaumont] no fiduciary duty under Texas law" because "[t]he mere fact that [Wallis] Bank was involved in the loan and construction process . . . does not rise to the level required for a fiduciary duty to exist."[17] Beaumont responds with copious citations to the evidentiary record that cumulatively serve to demonstrate, at the very least, a triable question of Wallis Bank "assum[ing] the role of fiduciary rather than mere creditor through myriad actions that demonstrate excessive control."[18]

On account of this genuine dispute as to the parties' formation of a fiduciary relationship, the Court **DENIES** Wallis Bank's Motion for Partial Summary Judgment to the extent it requests dismissal of Beaumont's breach of fiduciary duty claim. *See Celotex*, 477 U.S. at 322–23.

---

[17] Defs.' Mot. for Summ. J. 6, ECF No. 19.
[18] Pl.'s Resp. 34-37, ECF No. 50.

### 3. Insurance Code Violations

Wallis Bank seeks summary judgment dismissal of Beaumont's claim for insurance code violations on grounds that: (i) Wallis Bank is not engaged in the "business of insurance" as defined under the Texas Insurance Code; and (ii) Beaumont's claim is nonetheless expired under the applicable statute of limitations period.[19]

#### i. Business of Insurance

In support of its first contention, Wallis Bank reasons that it cannot be held liable under the Texas Insurance Code because its challenged conduct does not amount to the requisite "business of insurance" definition provided under Section 101.051(b)(2) of the Code. However, Beaumont predicates its Texas Insurance Code claims on the "business of insurance" definition provided under Section 101.051(b)(4)(B) of the Code.[20] Beaumont's original identification of Section 101.051(b)(2) was a scrivener's error that it has since corrected in a subsequent amended complaint.[21] As such, Wallis Bank's first contention is moot.

#### ii. Statute of Limitations

Wallis Bank's second contention is that the two-year statute of limitations bars Beaumont's recovery under Chapter 541 of the Texas Insurance Code. As an initial matter, it is certainly the case that "[c]laims for violations of Section 541 of the Texas Insurance Code must be brought within two years after the cause of action accrues." *Hames v. Safeco Ins. Co. of Indiana*, No. 4:20-CV-01167-P, 2021 WL 5936907, at *3 (N.D. Tex. Aug. 6, 2021) (citing TEX. INS. CODE § 541.162(a)). In support of its contention, Wallis Bank points to the fact that Beaumont did not

---

[19] Defs.' Mot. for Summ. J. 6-7, ECF No. 19; Defs.' Reply 3, ECF No. 71.
[20] *See* Pl.'s Resp. 37-38 & n.6, ECF No. 50.
[21] *Id.*; *compare* Orig. Pet. 44, ECF No. 1-1, *and* First Amend. Compl. 56, ECF No. 26, *with* Second Amend. Compl. 56, ECF No. 55.

bring its insurance code claim until after the exact two-year anniversary of Walls Bank's alleged unlawful retainer of insurance commissions had passed.[22]

Although its factual proposition is undisputed, Wallis Bank merely quotes a portion of the applicable statute of limitations provision to assert the legal conclusion that Beaumont's insurance code claim is time-barred.[23] Conversely, Wallis Bank attempts to conceal the more relevant provisions, which provide that the two-year time bar is not triggered until either: "the date the unfair method of competition or unfair or deceptive act or practice occurred;" *or* "the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred." TEX. INS. CODE § 541.162(a)(1)-(2). Drawing from the available evidence in response, Beaumont thoroughly counterargues that it only discovered Wallis Bank's alleged fraudulent insurance commissions during the litigation of this case, which is when the applicable statute of limitations period should begin to run.[24] Wallis Bank hardly attempts to refute of this.[25]

By virtue of there existing a genuine dispute as to whether Beaumont is time-barred from recovering under the Texas Insurance Code, the Court **DENIES** Wallis Bank's Motion for Partial Summary Judgment insofar as it requests dismissal of Beaumont's insurance code violations claim. *See Celotex*, 477 U.S. at 322–23.

---

[22] Defs.' Mot. for Summ. J. 7, ECF No. 19.
[23] *Id.* ("A person must bring an action under this chapter before the second anniversary . . ." (quoting TEX. INS. CODE § 541.162(a)(1)-(2))).
[24] *See* Pl.'s Resp. 38-39, ECF No. 50
[25] *See generally* Defs.' Reply 2-10, ECF No. 71.

\*   \*   \*   \*

In light of the foregoing, the Court concludes that the Bank Defendants have failed to establish their entitlement to summary judgment against Beaumont on any of the claims they move the Court to dismiss.

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendants' Motions for Summary Judgment (ECF Nos. 18, 19, 20) are **DENIED** and the Motions to Strike and/or for Leave to File a Sur-Reply (ECF Nos. 52, 69, 73, 78) are **DENIED for mootness**.

**SO ORDERED** on this **6th day of February 2024**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**